**WOODFORD v. UNITED STATES.**
No. 10197.

Circuit Court of Appeals, Eighth Circuit.
May 17, 1935.

J. A. Tellier, of Little Rock, Ark. (DuVal L. Purkins, of Warren, Ark., on the brief), for appellant.

Fred A. Isgrig, U. S. Atty., of Little Rock, Ark. (W. H. Gregory, Asst. U. S. Atty., of Little Rock, Ark., on the brief), for the United States.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is an appeal from a judgment following conviction upon two counts of an indictment, containing eight counts, returned in the Eastern District of Arkansas. Appellant is described as a Property and Disbursing Officer of the United States for the state of Arkansas, appointed and acting as such under the provisions of section 67, chapter 134 of the Act of Congress of June 3, 1916, 39 Stat. 200, as amended (32 USCA § 49). Counts 1, 4, 6, 7, and 8 charge appellant with unlawfully, knowingly, fraudulently, and feloniously converting to his own use, as such Property and Disbursing Officer, public moneys of the United States. Counts 2, 3, and 5 charge appellant with unlawfully, fraudulently, and feloniously causing to be presented to him, as such Property and Disbursing Officer, for payment, certain false, fraudulent and fictitious claims against the War Department of the United States. Appellant's demurrer to the indictment was overruled and exception preserved. Appellant next moved that the United States be required to elect upon what class of alleged crimes it would place defendant on trial, and that upon failure so to elect said indictment be quashed. This motion was overruled and exception was taken. In the course of the trial counts 1, 3, 6, 7, and 8 were dismissed by the court. Counts 2, 4, and 5 were submitted to the jury. Conviction resulted upon counts 2 and 4, and a verdict of not guilty upon count 5. The court imposed a sentence of four years in the penitentiary on count 2, and a like penitentiary sentence together with a fine of $480 on count 4; the prison terms to run concurrently. These two counts, so far as essential to understanding of the issues presented, are here set out:

"Count II.

"And the Grand Jurors aforesaid, upon their oaths, do further present:

"That during the period of time from the 28th day of February, 1923, to and until the 22nd day of November, 1933, one Edward Woodford, who is the same Edward Woodford named in the first count of this indictment, was an officer of the United States, to-wit, the Property and Disbursing Officer of the United States for Arkansas, duly appointed and acting as such under the provisions of section 67, chapter 134 of the Act of Congress of June 3, 1916, 39 Stat. 200; and he, the said Edward Woodford, in Pulaski County, in the State of Arkansas, on or about the 4th day of May, 1931, did then and there knowingly, unlawfully, fraudulently and feloniously cause to be made by Jennings Motors, of Little Rock, Arkansas, a certain false, fictitious and fraudulent written claim against the War Department of the United States in favor of said Jennings Motors in the amount of $480.00, and which claim was to be presented to him, the said Edward Woodford as such Property and Disbursing Officer of the United States, for payment, as and purporting to be for services rendered to the War Department of the United States by the said Jennings Motors in over-hauling and re-winding magnetos for F. W. D. trucks, including labor and materials, on or about June 27, 1930, when in truth and in fact the said Jennings Motors had not rendered

such services, labor and materials, and said claim was false, fictitious and fraudulent and the said Jennings Motors was not entitled to payment thereof, all of which he, the said Edward Woodford, then and there well knew; said false claim, together with War Department, Militia Bureau, Form No. 41, attached thereto as authority for the expenditure of said amount, being in words and figures as shown by photostatic copies thereof here following and made a part hereof, to-wit: (Said words and figures being in this opinion omitted) Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

### "Count IV.

"And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present:

"That during the period of time from the 28th day of February, 1923, to and until the 22nd day of November, 1933, one Edward Woodford, who is the same Edward Woodford named in the first count of this indictment, was an officer of the United States, to-wit, the Property and Disbursing Officer of the United States for Arkansas, duly appointed and acting as such under the provisions of section 67, chapter 134, of the Act of Congress of June 3, 1916, 39 Stat. 200; and he, the said Edward Woodford, in Pulaski County, in the State of Arkansas, on or about the 5th day of May, 1931, then and there being the Property and Disbursing Officer of the United States as aforesaid and acting as such, did knowingly, unlawfully, fraudulently and feloniously withdraw from the Treasurer of the United States for a purpose not prescribed by law, to-wit, for the purpose of paying a personal obligation owing by him the said Edward Woodford to Jennings Motors, of Little Rock, Arkansas, certain public money intrusted to him, the said Edward Woodford as such Property and Disbursing Officer of the United States, in the amount of $480.00, a more particular description of the same being to the Grand Jurors unknown, save and except that such withdrawal was effected by a check numbered 7,266, dated May 5, 1931, drawn by the said Edward Woodford as such Property and Disbursing Officer of the United States on the Treasurer of the United States for said sum of $480.-00, payable to the order of said Jennings

Motors, and which check was duly paid; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The points relied upon by appellant are:

(1) All counts in the indictment are fatally defective because appellant was not an officer of the United States by reason of his alleged appointment as Property and Disbursing Officer. The statute under which he is alleged to have been appointed (32 USCA § 49) is in conflict with the provisions of article 2, § 2, of the Constitution of the United States, and void.

(2) Counts 2, 3, and 5 are fatally defective for the reason that it was not alleged in said counts that said claims were made or caused to be presented to an officer of the United States having authority to examine, allow, approve, or pay said claims.

(3) The trial court committed error in refusing to sustain defendant's motion to require the government to elect on which counts or classes of counts it would put the defendant to trial, whether on the series numbered 1, 4, 6, 7, and 8, or the series numbered 2, 3, and 5.

(4) Counts 1, 4, 6, 7, and 8 are fatally defective because they did not aver that the money alleged to have been converted by the defendant was money belonging to the United States.

The appeal is based entirely upon these challenges to the indictment.

■ 1. Section 67, Chapter 134, Act June 3, 1916, 39 Stat. 200, as amended (32 USCA § 49), so far as deemed essential to be quoted here, reads as follows: "Property and disbursing officers. The governor of each State and Territory and the commanding general of the National Guard of the District of Columbia shall appoint, designate, or detail, subject to the approval of the Secretary of War, The Adjutant General or an officer of the National Guard of the State, Territory, or District of Columbia, who shall be regarded as property and disbursing officer of the United States. He shall receipt and account for all funds and property belonging to the United States in possession of the National Guard of his State, Territory, or District, and shall make such returns and reports concerning the same

as may be required by the Secretary of War. The Secretary of War is authorized, on the requisition of the governor of a State or Territory or the commanding general of the National Guard of the District of Columbia, to pay to the property and disbursing officer thereof so much of its allotment out of the annual appropriation for the support of the National Guard as shall, in the judgment of the Secretary of War, be necessary for the purposes enumerated therein. He shall render, through the War Department, such accounts of Federal funds intrusted to him for disbursement as may be required by the Treasury Department. Before entering upon the performance of his duties as property and disbursing officer he shall be required to give good and sufficient bond to the United States, the amount thereof to be determined by the Secretary of War, for the faithful performance of his duties and for the safekeeping and proper disposition of the Federal property and funds intrusted to his care. He shall, after having qualified as property and disbursing officer, receive pay for his services at a rate to be fixed by the Secretary of War."

Section 2 of article 2 of the Constitution, with which the foregoing Act of Congress is claimed to be in conflict, provides: "He [the President] shall have Power * * * and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public ministers and Consuls, Judges of the Supreme Court, and all other officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

It will be noted that the act last quoted provides that the Governor of each state shall "appoint, designate or detail" some officer from the National Guard of the state, who, upon approval by the Secretary of War, shall be regarded as "property and disbursing officer of the United States." Upon entering upon the performance of his duties the said officer must give a good and sufficient bond to the United States for the faithful performance of his duties, and "for the safekeeping and proper disposition of the Fed-

eral property and funds intrusted to his care." The Secretary of War, thereupon, is authorized to pay to such property and disbursing officer so much as, in the judgment of the Secretary, is necessary out of the annual appropriation by the government for the support of the National Guard of the state. The property and disbursing officer shall render, through the War Department, such accounts of federal funds "intrusted to him for disbursement" as may be required by the Treasury Department, and shall receive "pay for his services at a rate to be fixed by the Secretary of War."

The indictment describes appellant as "an officer of the United States, to-wit, the Property and Disbursing Officer of the United States for Arkansas, duly appointed and acting as such" under the provisions of this act of Congress. This argument of counsel is directed mainly to their contention that the appointment is by the Governor of the state, and, therefore, not by the head of a department of the government as required by constitutional mandate. The meaning conveyed by the language of the act is clear and unambiguous. The Governors of the states merely designate or detail the officers of the National Guard for the consideration of the Secretary of War as proposed property and disbursing officers of the United States, to administer allotments out of the annual appropriation made by the government for the support of the National Guard of the several states. When the persons so designated are approved by the Secretary of War, they become such officers of the United States within the meaning of section 2 of article 2 of the Constitution. The indictment alleges that the appellant was duly so appointed and so acted. The Secretary of War is the head of a department of government; a cabinet officer. Appointment by him is expressly authorized by act of Congress. Approval of an appointment, designation, or detail, made by the Governor is equivalent to a direct appointment by the Secretary himself. The case in this respect falls directly within the rule announced in United States v. Hartwell, 6 Wall. 385, 393, 18 L. Ed. 830, and is unimpaired by the cases cited by counsel for appellant in support of their contention upon this point. United States v. Germaine, 99 U. S. 508, 25 L. Ed. 482; United States v. Schlierholz (D. C.) 133 F. 333, and Id. (D. C.) 137

F. 616; United States v. Mouat, 124 U. S. 303, 307, 8 S. Ct. 505, 31 L. Ed. 463; United States v. Smith, 124 U. S. 525, 8 S. Ct. 595, 31 L. Ed. 534; Heaton et al. v. United States (C. C. A. 2) 280 F. 697; Martin v. United States (C. C. A. 8) 168 F. 198.

■ The indictment avers the due appointment of the defendant in the manner provided in the act. We do not approve the practice of stating essential elements of a statutory offense by general reference to the terms of the statute. Such elements may succinctly and completely be stated in the indictment without leading to that objectionable expansion of pleadings which courts seek to discourage. However, it is apparent that the indictment charges the defendant with acts coming substantially within the statutory description, the accused was apprised with reasonable certainty of the nature of the accusation against him to the end that he might prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. The indictment is not obnoxious to criticism as pleading mere conclusions. Myers v. United States (C. C. A. 8) 15 F.(2d) 977. Moreover, we have before us no bill of exceptions, nor complaints respecting the nature of the evidence adduced. We cannot say from anything urged that prejudice has resulted from this form of pleading. We think, in any event, that a case is presented for the application of the remedial statute (18 USCA § 556) where the only defect is that some element of the offense is stated loosely and without technical accuracy. Horn et al. v. United States (C. C. A. 8) 182 F. 721.

"No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant." Section 556.

■ However, appellee claims that it is not essential under the statute to establish that appellant was strictly an officer within the meaning of article 2 of the Constitution, in so far as count No. 4 is concerned. Section 173, 18 USCA, applies in terms to whoever "being a disbursing officer of the United States, or a person acting as such" converts to his own use any public money intrusted to him. The indictment describes appellant as duly appointed and acting as a property and disbursing officer of the United States. It is quite conceivable that an employee of the government may act as a disbursing officer, although not formally and technically, by valid appointment, constituted such officer. Otherwise, that provision of the Congressional act is superfluous and meaningless. It will be noted that the prison sentences under counts 2 and 4 are identical and run concurrently. Invalidation of the one would not affect the other. Blitz v. United States, 153 U. S. 308, 14 S. Ct. 924, 38 L. Ed. 725.

■ 2. It is conceded that it must sufficiently appear from the indictment that the officer to whom a false and fictitious claim is presented must be one clothed with authority to examine and approve. United States v. Christopherson (D. C.) 261 F. 225. The indictment herein recites that appellant caused this false claim to be presented to himself as Property and Disbursing Officer for payment, and that it was approved and paid by him, as evidenced by public voucher aptly formulated for that purpose. The term "Property and Disbursing Officer" connotes something more than the mere word "officer" used in the Christopherson Case. As pointed out in our discussion under point 1, property of the government was intrusted to him for disbursement, which means payment, for the purposes enumerated in the act, to which reference was made. He was required to give bond for the faithful performance of his duties and for "the safekeeping and proper disposition of the Federal property and funds intrusted to his care." We think in the instant case, for the reasons stated, this point should be resolved against appellant.

■ 3. All the counts in this indictment charged acts and transactions of the same class of offenses. All dealt with the studied purpose of appellant as property and disbursing officer of the United States to convert federal funds to his own personal use through the same unlawful practices. Counts 2 and 4, upon which he was convicted, charge acts and transactions connected together. Under such circumstances a motion to require the government to elect is addressed to the sound discre-

tion of the trial court to .see that no prejudice results from its ruling. "The authorities concur in holding that a joinder in one. indictment, in separate counts, of different felonies, at least of the same class or grade, and subject to the same punishment, is not necessarily fatal to the indictment upon demurrer or upon motion to quash or on motion in arrest of judgment, and does not, in every case, by reason alone of such joinder, make it the duty of the court, upon motion of the accused, to compel the prosecutor to elect upon what one of the charges he will go to trial. The court is invested with such discretion as enables it to do justice between the government and the accused. If it be discovered at any time during a trial that the substantial rights of the accused may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, the court, according to the established principles of criminal law, can compel an election by the prosecutor." Pointer v. United States, 151 U. S. 396, 403, 14 S. 'Ct. 410, 412, 38 L. Ed. 208.

█ As in that case, we cannot say from anything on the face of the indictment or of the record before us that the trial court erred or abused its discretion in overruling the appellant's motion to elect upon which counts appellant should be put to trial.

█ 4. The indictment charges that, as property and disbursing officer, appellant "withdrew certain public money intrusted to him" in the amount of $480, and that this withdrawal was effected by a check drawn by appellant in his official capacity on the Treasurer of the United States, which check was paid. We do not think more specific language was necessary to describe the money alleged to have been converted as the money of the United States.

█ We have already indicated that we think the indictment in this case might have been improved in conformity with well-recognized principles of pleading, but we do not think it so informal as to warrant reversal in the absence of any showing that the substantial rights of the accused have been prejudiced. It should "be borne in mind that the object of criminal proceedings is to convict the guilty, as well as to shield the innocent. * * *

[And] 'the defendant * * * is entitled to a formal and substantial statement of the grounds upon which he is questioned, but not to such strictness in averment as might defeat the ends of justice.'" Evans v. United States, 153 U. S. 584, 590, 14 S. Ct. 934, 937, 38 L. Ed. 830; Cochran & Sayre v. United States, 157 U. S. 286, 287, 290, 15 S. Ct. 628, 39 L. Ed. 704; Ledbetter v. United States, 170 U. S. 606, 18 S. Ct. 774, 42 L. Ed. 1162; Myers v. United States (C. C. A. 8) 15 F.(2d) 977; United States v. Howard (D. C.) 132 F. 325; MacDaniel v. United States (C. C. A.) 87 F. 324; United States v. Terry (D. C.) 39 F. 355.

It follows that the judgment below should. be affirmed, and it is so ordered.